IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TRACY BERNARD WILLIAMS PLAINTIFF

v. Civil No.4:10-cv-04053

WARDEN TURNER, Miller County Correctional Facility; NURSE WILLIAMS; DR. NASH; KIM VILLANCOURT; and CORRECTIONAL HEALTH CARE MANAGEMENT DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Tracy Bernard Williams (hereinafter Williams), an inmate of the Arkansas Department of Correction (ADC), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. This case is before me pursuant to the consent of the parties (ECF No. 20).

The events at issue in this case occurred while Williams was incarcerated at th Miller County Correctional Facility (MCCF). Separate Defendants Nurse Williams, Dr. Nash, Kim Villancourt and Correctional Healthcare Management, filed a motion for summary judgment (ECF No. 38)(collectively referred to as the Medical Defendants). Williams has filed a response to the motion (ECF No. 41 & ECF No. 42). Separate Defendant Warden Turner (Turner) has also filed a motion for summary judgment (ECF No. 46). Williams has filed a response to the motion (ECF No. 50 & ECF No. 51). Finally, Williams has filed two motions for summary judgment (ECF No. 52 & ECF No. 61). Defendants have responded to these motions (ECF Nos. 54, 57, & 62).

**I. BACKGROUND**

Plaintiff filed this case contending he was denied adequate medical care while incarcerated

at the MCCF. On October 8, 2009, Williams was booked into in the MCCF. *Defendants' Exhibit* A at ¶ 6 (ECF No. 40-1)(hereinafter *Defts' Ex.*). Williams indicates he remained incarcerated there for thirteen months before his transfer to the ADC. *Plaintiff's Statement of Facts* (ECF No. 58).

Carmalita Williams is a licensed practical nurse and the Health Services Administrator at the MCCF. *Defts' Ex.* A at ¶ 2 (ECF No. 40-1). Williams was diagnosed with CML in 2000 but is in remission. *Defts' Ex.* B at pg. 4 (ECF No. 40-2); *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) 2 pg. 1 (ECF No. 41-2). He has been prescribed Gleevec® which is a brand name for the drug Imatinib that is used treat certain types of leukemia.[1] *Defts' Ex.* B at pg. 4 (ECF No. 40-2) & *Defts' Ex.* A at ¶¶ 4-5 (ECF No. 40-1). Williams takes one 400 mg. Gleevec® tablet daily and has been cautioned by his doctor to make sure he does not run out of the medication. *Defts' Ex.* A at ¶ 5 (ECF No. 40-1); *Defts' Ex.* B at pg. 4 (ECF No. 40-2).

When he was booked into the facility, Williams had two bottles of Gleevec® that he brought with him. *Defts' Ex.* A at ¶ 7 (ECF No. 40-1). During October and November, the Medical Defendants' maintain Williams received his medication everyday. *Id.* at ¶ 8 . Williams was scheduled to see Dr. J.D. Patel on December 10th. *Id.* at ¶ 9. Dr. Patel was unavailable and Williams was rescheduled for December 31st. *Id.* at ¶ 10. However, he was given a new written prescription for Gleevec® on December 10th by the on call physician. *Plff's Ex.* 3 (ECF No. 41-3).

On December 14, 2009, the Medical Defendants indicate Williams ran out of Gleevec®. *Defts' Ex.* A at ¶ 11 (ECF No. 40-1). At his visit with Dr. Patel on December 31st, Williams was again given a new prescription, referred to another clinic regarding his rectal bleeding and told to return in four months. *Id.* at ¶ 10; *Defts' Ex.* B at pg. 4 (ECF No. 40-2). Williams reported to Dr. Patel that he had been out of Gleevec® since November 22, 2009. *Plff's Ex.* 4 pg. 5 (ECF No. 41-4).

[1] http://www.nlm.nih.gov/medlineplus/druginfo/meds/a606018.html (accessed February 10, 2011).

After this visit with Dr. Patel, Williams asserts he was not appropriately monitored, was not taken to see Dr. Patel again, and only had two blood tests during the thirteen months he was at MCCF. *Plaintiff's Statement of Facts* (ECF No. 58); *Plaintiff's Motion for Summary Judgment* (ECF No. 61 at pg.1).

Upon receipt of the December 31st prescription, the Medical Defendants state the medication was ordered from the approved pharmacy, Diamond Pharmacy, in Indiana, Pennsylvania. *Defts' Ex.* A. at ¶ 12 (ECF No. 40-1). The first doses of medication were not received at the MCCF until January 11, 2010. *Id.* Another thirty doses were received on January 26th. *Id.*

Diamond Pharmacy processed additional orders for Gleevec® on February 27th, March 24th, May 4th, June 10th, July 12th, August 17th, and September 14th. *Defts' Ex.* A at ¶ 13 (ECF No. 40-1). When the order was placed by facsimile on August 10th, the Medical Defendants were notified the pharmacy did not have the medication in stock. *Id.* at ¶ 14. The prescription was filled on August 17th and forwarded to MCCF. *Id.* Williams was out of medication from August 14th to August 18th. *Id.* In total, the Medical Defendants assert Williams was out of medication for thirty-two days. *Id.* at ¶ 16. However, they maintain part of this was due to the scheduling problem with Dr. Patel and the pharmacy not having the medication in stock. *Id.*

According to Williams, he was out of medication from November 20, 2009, to January 8, 2010 or January 11th,[2] from January 25th to February 8th, from February 20th to February 23rd, from February 27th to March 2nd, from August 14th to August 17th, and again from September 5th until some unspecified date. *Plaintiff's Exhibit* 2 at pgs. 1 & 5 (ECF No. 41-2).

According to the Medical Defendants, Williams was offered, but refused, his Gleevec®

---

[2] Williams uses different dates in the documents he has submitted to the Court. *See e.g., Plaintiff's Exhibit* 2 at pgs. 1 & 5 (ECF No. 41-2); *Plaintiff's Statement of Facts* (ECF No. 58).

medication on April 23rd-25th and the 28th, on May 22nd and May 26th-31st, on June 1st, 12th, and the 15th to the 25th. *Defts' Ex.* A at ¶ 15 (ECF No. 40-1); *Turner's Exhibit* D (ECF No. 47-4)(refused medication and food April 24, 2010, to April 26, 2010). In total, they maintain Williams refused his medication twenty-four days because, in part, he was protesting having to eat "bread loafs." *Id. See also Defts' Ex.* C (ECF No. 40-3).

Williams agrees that he refused to take the medication a number of times but maintains the dates given by the Medical Defendants are incorrect. *Plaintiff's Response* (ECF No. 41) at pg. 4. He indicates he refused for a period of time in April but it was a consecutive number of days and again from May 22nd to June 25th. *Id.* He indicates he was fasting in protest of being fed "bread loaf" or "slop." *Id.*

On October 21, 2009, the Medical Defendants indicate Williams had a complete blood count (CBC) performed that showed no evidence of leukemia or anemia. *Defts' Ex.* A at ¶ 18 (ECF No. 40-1). On November 2nd, Williams was found to have blood in his stool. *Id.* Williams was assessed by a nurse practitioner on November 12th. *Id.* at ¶ 20. The Medical Defendants indicate they now know that a CBC was performed by Dr. Patel's office on December 31st that showed mild anemia. *Id.* At the time, the results were not "released to" the Medical Defendants. *Id.* It is unclear whether the Medical Defendants requested these records at the time.

According to Williams, between November 16, 2009, and February 2010, Nurse Williams gave him three stool tests. *Turner's Ex.* F pg. 2 (ECF No. 47-6). Each was positive for blood in his stool. *Id.* However, he received no treatment in response to the positive tests. *Id*.

On March 1, 2010, a CBC was performed and showed no evidence of leukemia or anemia. *Defts' Ex.* A at ¶ 22 (ECF No. 40-1). On March 13th, Williams was examined by Dr. Nash for complaints of rectal bleeding and Williams was placed on fiber and a stool softener. *Id.* at ¶ 23. On

March 23rd, Dr. Ranga Balasekaran's office was contacted to schedule a colonoscopy for Williams. *Id.* at ¶ 24. The colonoscopy was performed on April 29th and showed the rectal bleeding was due to small internal hemorrhoids. *Id. See also Defts' Ex.* D (ECF No. 40-4).

On October 28, 2010, Nurse Williams was advised that sixteen pills of various types had been found in Williams' cell. *Turner's Ex.* E (ECF No. 47-5). One of the medications was a three day supply of Gleevec.® *Id.* Williams maintains his medication had been given to another inmate in the same cell. *Plff's Response* (ECF No. 51 at pgs. 2-3).

With respect to Turner, Williams maintains he prevented Williams from receiving the medical treatment he needed. *Turner's Ex.* F pg. 2 (ECF No. 47-6). Specifically, Williams indicates Turner would not "sign off for" him to get the outside help he needed and said the medication was too expensive. *Id.*

## II. DISCUSSION

As mentioned above, four motions for summary judgment have been filed by the parties.

***Medical Defendants' Motion for Summary Judgment***

The Medical Defendants contend they are entitled to judgment in their favor because there is no evidence that they were deliberately indifferent to Williams' serious medical needs. Moreover, they maintain Williams cannot prove that a custom or policy of Miller County resulted in a violation of his constitutional rights.

In opposition, Williams argues there is ample evidence of deliberate indifference on the Medical Defendants' part. He asserts on more than one occasion he was out of Gleevec® due to their failure to obtain a new prescription if one was needed, to fill the prescription received on December 20th, and thereafter by failing to timely refill the prescription. He also contends they failed to take him to Dr. Patel or conduct blood tests to monitor the CML. With respect to the rectal

bleeding, he points out that in November of 2009 a stool sample tested positive for blood. Despite this, he was not seen by Dr. Nash until March of 2010 and a colonoscopy was not done until late April.

In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to

> respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, I believe there are genuine issues of fact that preclude summary judgment in the Medical Defendants' favor. With respect to the Gleevec medication, Williams arrived at the MCCF with a unspecified number of pills in two separate bottles. His medical records were apparently obtained and Dr. Nash approved Williams continuation on the medication. *Defts' Ex.* 1 (ECF No. 57-1). Although there is a dispute about the date Williams ran out of medication, December 14th according to the Medical Defendants and November 22nd according to Williams, the Medical Defendants were aware of the fact the medication was to be taken on a daily basis for CML. Yet, they took no steps to ensure the medication was available to Williams on a daily basis as prescribed. When the medication ran out, whether it was in November or December, the Medical Defendants did not attempt to obtain a new prescription for the medication and once a new prescription was given on December 10th there is no evidence in the record that they even attempted to get the prescription filled. Instead, the Medical Defendants waited until after the December 31st prescription was received to obtain the medication. Even then, they used an out of state pharmacy to fill the order which resulted in the medication not being available until January 11th. By the Medical Defendants' own admission, Williams was also out of the medication on at least one other occasion because the pharmacy chosen did not have the medication in stock. Despite this, there is no indication that efforts were made to obtain the medication from elsewhere.

The fact that Williams may have refused the medication on various days does not excuse the

Medical Defendants failure, on more than one occasion, to have the medication available on the prescribed basis. Moreover, there is no indication that Williams was scheduled for, or taken to, a follow-up visit with Dr. Patel in four months. Turner has submitted an exhibit that he suggests shows Williams was seen by Dr. Patel on a number of occasions. *Turner's Ex.* H (ECF No. 47-8). While this is true, all visits except the December 31, 2009, visit, occurred prior to Williams' incarceration at the MCCF. Thus, there are clearly issues of fact as to whether the Medical Defendants interfered with Dr. Patel's prescribed treatment.

With respect to the rectal bleeding, the Medical Defendants indicate that on November 2nd Williams was known to have blood in his stool. They suggest he was treated for this condition on December 31st by Dr. Patel and that the CBC done on that date indicates no anemia. However, it is clear from Dr. Patel's notes regarding the visit that Williams was not treated for this condition and instead was directed to see a different clinic. With respect to the blood test, the Medical Defendants cannot rely on this test because they were unaware, at the time, of the results of this test.

From November to February, Williams indicates he had three tests and all were positive for blood in his stool. He was not seen by Dr. Nash until March 13th when Williams was prescribed fiber and stool softener. No explanation for the rectal bleeding was found, or if it was is not in the record, until Williams underwent a colonoscopy on April 29th approximately six months after Williams first complained of rectal bleeding. Given the sequence of events, there are clearly issues of fact that preclude the entry of summary judgment in the Medical Defendants' favor.

***Plaintiff's Motions for Summary Judgment***

In Williams first motion (ECF No. 52), he makes the conclusory allegation that he believes Nurse Williams may have, either purposefully or by mistake, put him on a psychiatric medication

that could have caused him severe harm and perhaps even death. He indicates that on December 27, 2010, a mental health doctor discontinued this medication and informed him she didn't know why he had been put on the medication. Plaintiff offers no evidentiary support for these allegations instead asking the Court to obtain his records from the ADC so it can be determined who prescribed the medication.

In opposition, the Medical Defendants note that they obtained the ADC records and provided a copy to Williams. They argue Williams has failed to set forth any credible, admissible evidence in support of his allegation that Nurse Williams tried to cause him harm. Finally, the Medical Defendants note that any medication provided to Williams was pursuant to a valid physician's prescription. *Defts' Ex.* 1 (ECF No. 57-1). They indicate Williams did have a prescription for Hydroxyzine Pamoate or (Vistaril)50 mg. and that this medication is an antihistamine used as a sleep aid. *Defts' Ex.* 2 (ECF No. 57-2).

In Williams' second motion (ECF No. 61), he maintains that he was not taken to see Dr. Patel after December 31, 2009, or even to see Dr. Nash who authorized certain medication to be given to him. *Id.* He asserts that his complaints of rectal bleeding went unheeded and he was receiving inadequate medical care for a person who has CML. *Id.* Williams states he heard Turner say Williams would not be seeing Dr. Patel anymore and the Gleevec® was too expensive. *Id.*

Williams attaches to his motion a page from his ADC medical records indicating a prescription for Mirtazapine, a drug used to treat depression, with a brand name of Remeron®[3] or SolTab®, was discontinued. (ECF No. 61 pg. 4). There is no indication in the record that Williams

[3] http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697009.html (accessed February 10, 2010)

was receiving this medication while at the MCCF.

In response to the motion, Turner asserts there is no evidence of deliberate indifference on his part and no proof Williams was injured by any delay in medical care. (ECF No. 62). Turner also points out that Williams was being seen by medical professionals who were in charge of his care. *Id.*

As discussed above, there are genuine issues of fact as to whether the Medical Defendants were deliberately indifferent to Williams' serious medical needs. These issues of fact, preclude summary judgment in Williams' favor.

***Turner's Motion for Summary Judgment***

Turner maintains he is entitled to summary judgment in his favor because there "exists large amounts of documentation of Williams receiving outside medical attention. In support, Turner submits the colonoscopy report and records from Dr. Patel's office. However, as mentioned above, while the records from Dr. Patel's office indicate Williams was seen on multiple occasions only one of the visits occurred while Williams was incarcerated at the MCCF. Thus, at best, the records establish Williams was seen on December 31st by Dr. Patel on a CML follow-up and was seen on April 29th for a colonoscopy which was done because of complaints of rectal bleeding.

Turner also contends that as a non-medical person he cannot be held liable for decisions made by the medical staff. While as a general proposition this is a true statement, the summary judgment record does not contain an affidavit or other information regarding the role, if any, Turner had with regard to Williams' medical care. Certainly if Turner did, as Williams claims, deny Williams care and medication on the basis of cost, this may well be sufficient to establish deliberate indifference on Turner's part. There are genuine issues of fact that preclude entry of summary

judgment in Turner's favor.

## III. CONCLUSION

For the reasons stated, the motions for summary judgment (ECF No. 38, ECF No. 46, ECF No. 52 & ECF No. 61) are denied.

DATED this 16th day of February 2011.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE